```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF CONNECTICUT

DAVID LEWIS,                         :
                                     :
          Petitioner,                :
                                     :
V.                                   :    Case No. 3:05-CV-1982 (RNC)
                                     :
COMMISSIONER OF CORRECTION,          :
                                     :
          Respondent.                :
```

## RULING AND ORDER

Petitioner, a Connecticut inmate, was convicted by a jury of murder and conspiracy to commit murder. He brings this action for a writ of habeas corpus under 28 U.S.C. § 2254, challenging his conviction on the ground that it was obtained in violation of his Sixth Amendment right to effective assistance of counsel as established by Strickland v. Washington, 466 U.S. 668 (1984). For the reasons set forth below, the petition is denied.

I.   Background

Petitioner was charged in connection with the murder of Fitzroy "Soup" Pink. Evidence presented at petitioner's criminal trial showed the following. On September 18, 1988, a crowd gathered for a soccer game in New Haven. After playing in the game, petitioner and Trevor Pinnock left the field, obtained handguns from petitioner's car, then separated. Pinnock walked to a car occupied by Kenneth Pascoe, pointed an automatic handgun at Pascoe's head, told Pascoe, "You're dead," and pulled the trigger, but the gun failed to fire, enabling Pascoe to escape.

1

Moments later, petitioner aimed a gun at Pink from a distance of approximately two car lengths and fired multiple times, killing Pink.  Petitioner and Pinnock then ran from the scene together.  At the time of petitioner's arrest, nearly one year later, police discovered an identification card in his possession that contained Pinnock's name and photograph.  When questioned about the card, petitioner denied knowing anyone named Pinnock, but admitted to having shot and killed Pink.  At the trial, the jury convicted petitioner of murder and conspiracy to commit murder in connection with the shooting death of Pink.  Petitioner was represented at the trial by Attorney John R. Williams.

Petitioner appealed his conviction directly to the Connecticut Supreme Court, which rejected his claims on the merits and affirmed the judgment of conviction.  See State v. Lewis, 220 Conn. 602, 627 (1991).  Petitioner then filed a pro se petition for a writ of habeas corpus in the Connecticut Superior Court, amending his petition once.  After three days of testimony over the course of nine months, the state habeas court denied his petition in a written ruling.  See Lewis v. Warden, No. CV 930001767, 1999 WL 1081329 (Conn. Super. Ct. Nov. 15, 1999).  The Appellate Court affirmed in a written opinion.  Lewis v. Commissioner of Correction, 89 Conn. App. 850, 877 (2005).  Petitioner filed a petition seeking discretionary review by the Connecticut Supreme Court, which was denied.  Lewis v.

Commissioner of Correction, 275 Conn. 905 (2005).  Petitioner then brought this action.

II. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) provides that habeas relief is not available with regard to claims adjudicated on the merits in state court unless:

> (1) the adjudication of the claims resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d).  Petitions for federal habeas relief alleging state court errors in applying Strickland are assessed under the "unreasonable application" clause of AEDPA.  Bell v. Cone, 535 U.S. 685, 698-99 (2002).  To permit habeas relief under this clause, "a state court decision must be not only erroneous but also unreasonable.  Some increment of incorrectness beyond error is required."  Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir. 2000).

III. Discussion

In Strickland, the Supreme Court established a two-prong test for determining whether the Sixth Amendment right to effective assistance of counsel has been violated.  The defendant must prove that: (1) his counsel's performance fell below an objective standard of reasonableness under prevailing

3

professional norms; and (2) but for his counsel's errors, there is a reasonable probability the result of the proceedings would have been different.  Strickland, 466 U.S. at 688, 694.  Failure to show "either deficient performance or sufficient prejudice defeats the ineffectiveness claim."  Id. at 700.  Petitioner argues that the state courts improperly applied the Strickland standard of review, particularly with regard to the prejudice prong.  After careful review, I am persuaded that the state courts did not err in denying relief under Strickland.

A.   Failure to Investigate

Petitioner contends that the state courts unreasonably erred in holding that Attorney Williams's failure to conduct an adequate pretrial investigation was not prejudicial.  The Appellate Court noted that "the investigation bordered on deficient representation" but "petitioner failed to demonstrate any prejudice."  89 Conn. App. at 857 n. 2.  Petitioner focuses on two deficiencies regarding the investigation.

1. Testimony of Jerome Bailey

First, petitioner alleges that Williams's failure to investigate prevented the impeachment of a key witness, Jerome Bailey, who testified that he was at the soccer game, heard gunshots, and saw the petitioner with a gun in the area of the shooting.  According to petitioner, had Williams conducted an adequate investigation, he would have discovered witnesses to

cast doubt on whether Bailey was at the scene.  At the habeas hearing, petitioner submitted written statements of two witnesses, Carl Mitchell and Leonard Moore, which petitioner's brother had obtained during the course of his own investigation in 1992, approximately two years after petitioner's conviction.  Petitioner contends that Attorney Williams should have discovered these witnesses prior to the criminal trial.

The state courts rejected this claim because petitioner failed to prove that Mitchell or Moore would have testified at the murder trial.  See 89 Conn. App. at 860-61.  Neither witness testified at the habeas hearing and petitioner gave no explanation for his failure to produce them.  As a result, it is unclear whether either witness would have been available or willing to testify at the murder trial.  See United States v. Weiss, 930 F.2d 185, 199 (2d Cir. 1991) (speculative claims concerning an error's impact are insufficient to establish prejudice).

The state courts also rejected this claim on the ground that petitioner had failed to prove that the testimony of these witnesses would have had an impact on the outcome of the criminal trial.  See Lewis, 889 Conn. App. at 861.  In light of petitioner's confession and his possession of Pinnock's identification card, among other incriminating evidence, the state courts' decision is not unreasonable.  See Gersten v.

5

Senkowski, 426 F.3d 588, 611 (2d Cir. 2005) ("[W]here there is overwhelming evidence of guilt, even serious errors by counsel will not warrant granting a writ of habeas corpus.").

    2.   Victim's Medical Records

Petitioner also focuses on Williams's failure to investigate the following entry in Pink's medical records: "[h]ad an argument in the café.  Later found in the street."  Petitioner alleges that had Williams followed up on this entry, he could have created a reasonable doubt by implicating a third party. Williams testified that he chose not to investigate the statements in the medical records because there was no indication the entry was anything other than a clerical error.  In fact, the record as a whole suggests that petitioner shot Pink because he was under the belief that Pink was out to get him, as the Appellate Court correctly observed in rejecting this claim.  See Lewis, 89 Conn. App. at 861.

B.   Right to Testify

Petitioner next alleges that the state courts unreasonably erred in finding that he was sufficiently informed of his right to testify.  It is well-established that "[i]t is the right of every criminal defendant to testify on his own behalf." Rock v. Arkansas, 483 U.S. 44, 49 (1987).  Second Circuit precedent establishes that defense counsel bears the primary responsibility for advising the defendant of his right to testify.  Brown v.

Artuz, 124 F.3d 73, 79 (2d Cir. 1997).  This requires informing the defendant that the ultimate decision whether to testify belongs to him.  Id.

Petitioner's claim fails under both prongs of Strickland.  Regarding the performance prong, the habeas trial court found that petitioner knew of his right to testify.  Williams testified at the habeas hearing that he could not recall whether he explicitly told petitioner that he had a right to testify, but he could "categorically" state that he never told petitioner he would not let him testify.  Williams did remember informing petitioner that it would not be a good idea for him to testify.  This was corroborated by petitioner, who testified that "[Williams] didn't feel it was a good idea for me to take the stand" because "[the prosecution] would bring up the issue of the ID, the identification [that belonged to Pinnock] that [the police] took from me, and the marijuana [later found at the apartment]."  Lewis, 89 Conn. App. at 869.  Given this record, the Appellate Court reasonably concluded that petitioner was aware of his right to testify and a tactical decision was made that he should not take the witness stand.  See id. at 872.

Whether petitioner was aware that the decision about testifying was ultimately his to make is a closer call.  The burden, however, rests with petitioner.  See Chang v. United States, 250 F.3d 79, 86 (2d Cir. 2001) ("[Petitioner's] proffer

involved a generic claim--one that can be, and is often, made in any case in which the defendant fails to testify--based solely on his own highly self-serving and improbable assertions."). After careful review, I conclude that the state courts' rejection of this claim under the performance prong of Strickland was not unreasonable.

Although not discussed by the state courts, petitioner's claim also fails under the prejudice prong. Had petitioner been aware that the ultimate decision to testify was his to make, he might have heeded the advice of counsel and still not testified. And even had he testified to his innocence, it is doubtful the outcome would have been different given the overwhelming evidence against him, including the confession, the identification card, and Bailey's testimony, among other incriminating evidence. See Rega v. United States, 263 F.3d 18, 21-26 (2d Cir. 2001) (holding that a defendant claiming that counsel prevented him from testifying in his own behalf must demonstrate a reasonable probability that his testimony would have resulted in a different outcome at trial).

C.   Prosecution Witness Detective Ortiz

Finally, petitioner alleges that the state courts unreasonably erred in holding that Williams's handling of the testimony of Detective Ortiz was not constitutionally ineffective. Ortiz testified at petitioner's criminal trial that

petitioner had waived his Miranda rights and provided an unrecorded oral confession to the murder of Pink.  Ortiz then testified that he subsequently obtained a taped confession from petitioner on an unrelated matter, but when he resumed questioning petitioner about the murder, petitioner invoked his right to remain silent.  When asked why he had discontinued questioning petitioner, Ortiz responded, "the constitution prevents us [the police] from seeking anything further once he [the petitioner] invokes the fact that he doesn't want to speak with the police."  See Lewis, 89 Conn. App. at 863.

Petitioner now claims that this response violated his constitutional right to remain silent as provided in Doyle v. Ohio, 426 U.S. 610 (1976), and that Williams's failure to object provides a basis for habeas relief under Strickland.  In Doyle, the Supreme Court held that "the use for impeachment purposes of [a defendant's] silence, at the time of arrest and after receiving Miranda warnings, violate[s] the Due Process Clause of the Fourteenth Amendment."  Id. at 619.  The Court reasoned that "it would be fundamentally unfair and a deprivation of due process to allow the arrested person's silence to be used to impeach an explanation subsequently offered at trial."  Id. at 618.  On collateral review of an alleged Doyle violation, courts apply the harmless error standard set forth in Kotteakos v. United States, 328 U.S. 750 (1946), which looks to "whether the

9

error 'had substantial and injurious effect or influence in determining the jury's verdict.'" Brecht v. Abrahamson, 507 U.S. 619, 629-30, 637-38 (quoting Kotteakos, 328 U.S. at 776); see also Wood v. Ercole, 644 F.3d 83, 93-94 (2d Cir. 2011) (discussing harmless error post-AEDPA).

Here, Ortiz's testimony was not being used to impeach petitioner's credibility.  Rather, it was offered only to provide a procedural description of the interrogation as it unfolded and the investigative efforts made by Ortiz.  The response--a single reference to petitioner's invocation of his right to remain silent--was not probative of guilt, but only of why Ortiz stopped questioning petitioner.  See Greer v. Miller, 483 U.S. 756, 764 (1987) (finding no Doyle violation because prosecution was not permitted to impeach or call attention to defendant's post-arrest silence).  In addition, any conceivable error was harmless in light of the earlier evidence of petitioner's confession.  See Pagan v. Brown, No. 11-3434-PR, 2012 WL 2044608, at *2 (2d Cir. June 7, 2012).  Because petitioner has not established that the testimony violated Doyle, he is not entitled to relief.

Petitioner next argues that Williams's performance was deficient because he asked questions of Ortiz on cross-examination that opened the door for the prosecutor to obtain additional evidence of petitioner's post-Miranda silence.  During his examination, Williams highlighted that petitioner twice

invoked his right to remain silent during the taped confession of the unrelated matter.  As a result of that testimony, the prosecutor successfully entered into evidence the tape and a transcript of the interrogation.

A habeas court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  Strickland, 466 U.S. at 689. "Judicial scrutiny of counsel's performance must be highly deferential" and "every effort must be made to eliminate the distorting effects of hindsight."  Id. (internal quotations omitted).  Sufficiently deficient errors include "omissions [that] cannot be explained convincingly as resulting from a sound trial strategy, but instead arose from oversight, carelessness, ineptitude, or laziness."  Eze v. Senkowski, 321 F.3d 110, 112 (2d Cir. 2003).

Even assuming Williams elicited testimony that would have violated Doyle had he not opened the door--a questionable proposition--Williams's questioning was a deliberate trial strategy.  At the habeas hearing, Williams testified that his goal was to cast doubt on the testimony of Ortiz, described by Williams as a "devastating" witness.  Lewis v. Warden, No. CV 930001767, 1999 WL 1081329, at *12.  The most incriminating evidence, the confession, had already been elicited twice, so Williams had limited options.  He tried to use petitioner's

11

invocation of silence to demonstrate an inconsistency in Ortiz's testimony: whereas petitioner was willing to talk openly about certain criminal acts on tape, with regard to the murder, he contemporaneously invoked his right to silence and refused to give a written statement.  Given the strong presumption that Williams was exercising sound trial strategy, the habeas court committed no error in ruling that Williams's questioning was not unreasonable under the circumstances.

IV. Conclusion

The petition is hereby denied.  A certificate of appealability will not issue because the petitioner has failed to make a substantial showing of the denial of a constitutional right.  28 U.S.C. § 253(c)(2); Fed. R. App. P. 22(b).  The Clerk may enter judgment dismissing the petition.

                                        _____/s/ RNC_____
                                              Robert N. Chatigny
                                    United States District Judge